William B. ANDERS, Appellant,

v.

GEORGETOWN COLLEGE, Inc., et al.,
Appellees.

Court of Appeals of Kentucky.

May 13, 1955.

Rehearing Denied Feb. 10, 1956.

Breckinridge & Breckinridge, Lexington, for appellant.

Bradley & Bradley, Georgetown, for appellee.

HOGG, Judge.

William B. Anders, the appellant, a former professor at Georgetown College, brought suit in the Scott Circuit Court against the College to recover damages resulting from an alleged breach of a contract of employment. This appeal is prosecuted from a judgment sustaining the motion of the College for a directed verdict entered at the conclusion of the evidence for the appellant. The question is whether this ruling of the Circuit Court is correct.

The appellant testified that he was first contacted by Dean Hinton in the spring of 1945 concerning his employment by the College. During the same year he was employed as an Assistant Director of the Music Department. There was an understanding at that time that he would be made head of the Department upon the retirement of the then Department head. The appellant received a salary of $3,000 for the first regular school year, and a small raise each year thereafter until his salary reached $3,600 for the school year 1949–1950. He was promoted to Director of the Music Department in the spring of 1948. In February, 1949, he became Choir Director of the Calvary Baptist Church in Lexington at a salary of $2,400 per annum. This employment was in addition to and outside his regular duties at the College. He held that position with the Church until June, 1950, when he stated he resigned.

Appellant testified that prior to June 9, 1950, he discussed with the authorities at

the College the possibility of scholarships for choir members and a plan to take the College choir for performances to different churches in the Blue Grass area on Sundays. In order to carry out this plan, as he said, it would have been necessary for him to have given up his position with the Church. However, he stated that he was offered $1,000 additional salary, plus a certain per cent of the offerings which the College might receive from the churches. Later he was offered a smaller amount, which he refused to accept, and this program was never finally approved by the College authorities.

On July 5, 1950, the appellant was notified that his services were no longer needed at the College. He testified that the reason given for his dismissal was that he had "created enmity for the College by ordering two deacons out of choir rehearsal at the Calvary Baptist Church." Incidently, he had previously received a letter of dismissal from his position at the Church for the same reason.

The appellant filed suit against the College on August 17, 1950, and as a preliminary matter was granted an injunction restraining the College from dismissing him, or employing anyone in his place. On motion before this Court the injunction was dissolved in September, 1950.

It is admitted by the appellant that he has no claim against the College for the additional compensation he negotiated for. It is his contention that his regular salary was agreed upon and that it was $3,800 for the school year 1950–1951. The evidence relating to his regular salary shows that he had negotiated with the College for a raise to $4,000 a year, and that he was offered $3,800 instead. He testified that he did not refuse to accept the offer of $3,800 although, according to his testimony, during the pendency of the offer he was saying to the College authorities that he had to have more money from some source. The Col-

lege subsequently withdrew the offer of employment for the school year 1950–1951.

There is evidence that it was the custom and practice at Georgetown College in the hiring and firing of faculty members to make up their employment rolls for the ensuing year in the late winter or early spring, and to give notice of dismissals during February and March to those teachers whose services would not be required during the ensuing school year. As we have already stated, appellant received no notification of his dismissal until July, preceding the school year.

█ A proposition or offer imposes no obligation on the party making it, unless it is accepted by the party to whom it is made, and no obligation is then imposed unless the acceptance closes the contract. Walton's Ex'r v. Franks, 191 Ky. 32, 228 S.W. 1025; Citizens' National Life Insurance Co. v. Murphy, 154 Ky. 88, 156 S.W. 1069. Silence will not amount to the acceptance of an offer unless it is expressly so agreed. Cincinnati Equipment Co. v. Big Muddy River Consolidated Coal Co., 158 Ky. 247, 164 S.W. 794.

█ In this case, while there is evidence that the appellant did not reject the offer made to him, there is no evidence that he accepted the offer and his silence will not be construed as an acceptance. The question of whether or not there was an academic custom for teachers and professors to be notified early in the calendar year if their services were not to be required for the coming school year has no bearing or relevancy in this case. There were extended negotiations in the early part of 1950 and up to June, 1950, between the appellant and the College concerning his employment and its terms. Consequently, the custom could not result in a binding contract between the parties, or have any probative value in determining whether Anders had been employed.

Judgment affirmed.