SMILEY *v.* PRUDENTIAL INSURANCE COMPANY
OF AMERICA.

**1.** INSURANCE—LIFE—CONSTRUCTION OF APPLICATION—AMBIGUITY.
Where application for life insurance provided that if the full first premium is paid at time of making the application "the

REFERENCES FOR POINTS IN FOOTNOTES

[1, 3-5] 29 Am. Jur., Insurance, §§ 140, 141, 144, 219.
[1, 3-5] Temporary life, accident, or health insurance pending approval of application, or issuance of policy. 81 A.L.R. 332; and 107 A.L.R. 194.
[5] Right of insurance company, in view of its public interest, to reject applications for insurance. 107 A.L.R. 1421; and 123 A.L.R. 139.

policy shall take effect only if issued by the company," the application was not ambiguous, hence, rule that it would be construed against insurer because ambiguous was inapplicable.

2. SAME—CONSTRUCTION OF CONTRACT.

A contract for insurance is controlled by the same principles as any other contract, hence, what the contracting parties intended, mutually agreed to, and their minds met upon, is the measure of their obligations.

3. SAME—APPLICATION—OFFER AND ACCEPTANCE.

An application for life insurance is a mere proposal and like any other offer does not become a contract until accepted.

4. SAME—APPROVAL AS ACCEPTANCE OF OFFER.

Where an application provides that the insurance shall not take effect until the approval of the application by the insurer, no contract of insurance exists prior to such approval.

5. SAME—ACCEPTANCE OF APPLICATION—INTERIM INSURANCE.

Under application for insurance and receipt for premium paid, containing a promise to return the premium paid if policy was not issued and containing a proviso that the policy would be issued as applied for if approved and accepted at the home office, there was a reservation of the right to accept the application and until accepted there was no binding contract or interim insurance between the applicant and the insurer, hence, where applicant died before policy application was approved, application was rejected and no policy issued, the insurer was not liable to the beneficiary.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted January 15, 1948. (Docket No. 57, Calendar No. 43,670.) Decided April 6, 1948.

Assumpsit by Lucile Coleman Smiley against Prudential Insurance Company of America. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Armstrong, Weadock, Essery & Helm (Joseph J. Marshall* and *Frederick H. Greiner, Jr.,* of counsel), for plaintiff.

*Dickinson, Wright, Davis, McKean & Cudlip (Max L. Veech* and *Daniel J. Tindall, Jr.,* of counsel), for defendant.

SHARPE, J. This is an action by the beneficiary named in an application for a life insurance policy.

The material facts are as follows: On July 14, 1943, Errol Smiley made application to the Detroit office of the Prudential Life Insurance Company of America for a 10-year term policy of life insurance in the amount of $9,000. At the time the application was signed, Errol Smiley paid the first annual premium in the amount of $118.80 and signed the following statement which was a part of the application:

"I AGREE THAT:    *    *    *

"(4) Unless the full first premium is paid at the time of making this application, the policy shall take effect only if issued by the company and received by me or by the other applicant, if any, and the full first premium thereon is paid, all while my health, habits and occupation and any other conditions remain as described in the application, in which case the insurance shall be deemed to have taken effect as of the date on the face of the policy; (5) if at the time of signing this application the full first premium is paid, the insurance shall be deemed to have taken effect as of the date of part 1 or 2 of this application, whichever is the later, unless otherwise specifically requested in this application, provided the application is approved and accepted by the company at its home office in Newark, New Jersey, in accordance with the plan, premium and amount of insurance applied for."

On the same day, Mr. Smiley was given a physical examination by a physician employed by the insurance company and an assistant district superintendent recommended the risk for acceptance. On July 17, 1943, Errol Smiley developed severe pains in the stomach, later found to be caused by a ruptured ulcer.

He was taken to a hospital, operated on and died July 23, 1943. The application did not reach the desk of the person at the home office, authorized to accept or reject it, until July 26th, three days after the death of Mr. Smiley. On the same day the home office had information that an operation had been performed on Mr. Smiley. It then rejected the application and later refused to pay the claim.

The cause came on for trial and at the close of plaintiff's testimony, defendant made a motion for a directed verdict of no cause of action for the reason that there was no evidence that the application for insurance was approved and accepted by the insurance company; and that there was no contract for life insurance on Errol Smiley at the time of his death. The trial court took this motion under advisement and upon its renewal at the close of all testimony, granted same.

Plaintiff appeals and urges that when Mr. Smiley paid the insurance premium, the liability of the insurance company immediately attached subject to defeasance only in the event that the home office should reject the application prior to the death of the applicant; and relies upon *Wolfskill* v. *American Union Life Insurance Co.,* 237 Mo. App. 1142 (172 S. W. [2d] 471).

The receipt in the above case reads, in part, as follows:

"If a full first premium * * * has been paid at the time of the making of such application and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract applied for and in use by the company of this date, shall take effect on the date hereof, provided the application is completed as agreed therein, and provided the applicant is on this date a risk acceptable to the company under its rules, on the plan, for the amount and at the rate of premium

declared paid, and provided further that the applicant is on this date in good health; otherwise the payment evidenced hereby shall be returned upon demand and surrender of this receipt."

In this case the applicant died before the application was approved or the policy issued. The court there said:

"We are of the opinion that if the applicant, on the date of the application, was in good health and was insurable under defendant's *rules* on the plan and for the amount of insurance applied for, the insurance was in force from the date of the application and that the company could not arbitrarily decide otherwise. It follows that, if this condition was fulfilled, and there is no evidence as to what were defendant's rules relating to the matter, the binding receipt provided insurance for the amount applied for, et cetera, at the time of the applicant's death, and the defendant is liable unless it has some other defense. (*Western & Southern Life Ins. Co.* v. *Vale,* 213 Ind. 601 [12 N. E. (2d) 350, 353, 355]; *Stonsz* v. *Equitable Life Assurance Society of the United States,* 324 Pa. 97 [187 Atl. 403, 107 A. L. R. 178]; *Hart* v. *Travelers' Ins. Co.,* 236 App. Div. 309 [258 N. Y. Supp. 711, 716]; *Colorado Life Co.* v. *Teague* [Tex. Civ. App.], 117 S. W. [2d] 849.)"

It should be noted that the application and receipt in the above case were different from the application and receipt in the case at bar. In the above case the receipt was referred to as a "binding receipt" in the application. It did not contain any provision for approval of the application at the company's home office. It provided that the insurance should take effect on the date of the application, provided the applicant was on that date a risk acceptable to the company.

Plaintiff also relies upon *Prudential Ins. Co.* v. *Howard,* 18 Ohio Law Abs. 688; *Duncan* v. *John*

*Hancock Mutual Life Ins. Co.,* 137 Ohio St. 441 (31
N. E. [2d] 88); and *Leube* v. *Prudential Insurance
Company of America,* 147 Ohio St. 450 (72 N. E.
[2d] 76).

In the *Howard Case, supra,* there was no provision
in the application or the receipt for the return of
the premium as there is in the case at bar. In the
*Duncan Case* the receipt for the paid premium reads,
in part, as follows:

"No liability is assumed by the company on account
of this payment nor until it shall issue a policy, but
if death occurs after the date of the application
* * * and prior to the date of issue of such policy,
payment in accordance with and subject to the con-
ditions and provisions of the policy applied for shall
be made; provided the applicant is insurable under
the company's rules and the application is approved
and accepted by it at its home office as to plan, premi-
um and amount of insurance."

The court held that the language, "but if death
occurs *after the date of application* and prior to the
date of issue of such policy, payment in accordance
with and subject to the conditions and provisions of
the policy applied for shall be made," rendered the
provisions of the receipt ambiguous and, therefor,
to be construed against the insurance company. In
the *Leube Case* the receipt is similar in contents to
the receipt in the *Duncan Case* and the court made a
similar holding. In the case at bar, it cannot be
said the language contained in the receipt is ambigu-
ous, hence, the above cases are not controlling in
construing the instrument before us.

We have been unable to find any Michigan case
determinative of the issue of whether or not the
language of the application and receipt created in-
terim insurance. However, we have held that a con-
tract for insurance is controlled by the same prin-
ciples as any other contract.

In *Bowen* v. *Prudential Insurance Co. of America,* 178 Mich. 63, 69 (51 L. R. A. [N. S.] 587), we said:

"A contract of insurance rests upon and is controlled by the same principles of law applicable to any other contract. What the contracting parties intended, mutually agreed to, and their minds met upon, is the measure of their obligations."

See, also, *Hall* v. *Equitable Life Assurance Society of the United States,* 295 Mich. 404.

There are a number of cases from other jurisdictions in which it was held that the insurance did not become effective until the application had been approved and the policy issued at the home office of the insurance company.

In *Mutual Life Insurance Company* v. *Young's Administrator,* 90 U. S. (23 Wall.) 85 (23 L. Ed. 152), it appeared that on June 5, 1867, the applicant applied for a policy of insurance, paid the sum of $99.30, and received a receipt which read as follows:

"Received, San Francisco, June 5, 1867, from McPherson Young, of San Francisco, California, $99.30, being the first quarter-annual premium on his application for a policy of insurance of the Mutual Life Insurance Company of New York, for the sum of $5,000 on the life of said Young, payable at 45 or death, and premiums paid up in full in 10 years; said policy of insurance to take effect and be in force from and after the date hereof, provided that said application shall be accepted by the said company; but should the same be declined or rejected by said company, then the full amount hereby paid will be returned to said applicant upon the production of this receipt."

The application was forwarded to the company's home office and a policy was issued. The policy which was issued differed in several respects from that contemplated by the application. After its issuance the policy was transmitted to the company's agent

in San Francisco where it was received on August 2, 1867. The applicant died on September 20th, without having accepted or rejected the policy which had been forwarded to the California agent and without having knowledge that the substituted policy had been issued. In the litigation which followed, the trial court entered a judgment against the company. In reversing the judgment, the United States supreme court said (p. 106):

"The receipt of the 5th of June was the initial step of the parties. It reserved the absolute right to the company to accept or reject the proposition which it contained. * * * The entire subject was both affirmatively and negatively within its choice and discretion. The acceptance was a qualified one, and there was none other.

"It was by a policy departing from the terms specified in the receipt in the particulars before mentioned but containing as to the conditions imposed otherwise, nothing beyond what was usual in such cases. At this stage of the business, the company was not bound according to the receipt, because it had not agreed to a part of the terms specified, and those terms were material and of the essence of the proposition. Clearly the company never did agree to those terms."

See, also, *Mohrstadt* v. *Mutual Life Insurance Company of New York,* 52 C. C. A. 675 (115 Fed. 81); *Brancato* v. *National Reserve Life Insurance Company* (C. C. A.), 35 Fed. (2d) 612; *Braman* v. *Mutual Life Insurance Co. of New York,* 73 Fed. (2d) 391.

In *Olson* v. *American Central States Life Insurance Co.,* 172 Minn. 511 (216 N. W. 225), the application, which was signed by the applicant on September 12, 1925, read in part as follows:

"I desire policy issued as of date. And I agree that the period to cover which the first premium is paid shall end one year after said date and that each

policy year shall end on successive anniversaries of said date. I also agree that the insurance hereby applied for shall not take effect until the payment of the first premium thereon, and the approval of this application by the company."

The applicant was examined by defendant's medical examiner on September 14, 1925, and paid the first premium on September 16, 1925. The application was received at the home office on September 16, 1925, and the medical examiner's report arrived on September 17, 1925. On September 18, 1925, the applicant was stricken with infantile paralysis and died therefrom on September 23, 1925. On September 25, 1925, notice of the applicant's illness reached the home office and the application was rejected two days after the applicant died. The court said:

"The formal rejection of the application two days after the death of the applicant could not affect the rights of the parties, although defendant did not know of the death at that time. * * *

"Although the application was never accepted or approved by the company, plaintiff urges that as the policy was to be issued as of the date of the application and the premium paid covered the risk for one year from that date, defendant should be held to have contracted to insure Merritt from the date of his application if he was in fact an insurable risk on that date. The report of the medical examination showed that he was an insurable risk at the time it was taken. Defendant delayed acting upon the application in order to obtain further information as to Merritt's occupation to enable it to determine whether he came within the single or double indemnity class. He died before this information was received or any action had been taken.

"It is well settled that an application for life insurance is a mere proposal and like any other offer does not become a contract until accepted. * * * But plaintiff argues that unless the insurance began

on the date of the application the premium would cover a period during which defendant did not assume the risk, and the insured would be paying for insurance for a period when he was not insured. * * *

"That the assent of both parties to the same set of terms is necessary to create a contract is axiomatic. An offer never becomes a contract until accepted. Where an application provides that the insurance shall not take effect until the approval of the application by the insurer, no contract of insurance exists prior to such approval, although the application also provides that the policy shall bear the same date as the application and that the time covered by the premium shall be measured from that date."

In *Cooksey* v. *Mutual Life Insurance Co.,* 73 Ark. 117 (83 S. W. 317, 108 Am. St. Rep. 26), the applicant for insurance signed an application for insurance which contained the following:

"I have paid $* * * to the subscribing soliciting agent, who has furnished me with a binding receipt therefor, signed by the secretary of the company, making the insurance in force from this date, provided this application shall be approved, and the policy duly signed by the secretary at the head office of the company and issued."

He was examined by a physician who recommended acceptance of the application. The applicant died before the application was accepted and the policy issued. In holding that there was no contract of insurance in force at the time of death, the court said:

"It is not an unfamiliar custom among life insurance companies in the operation of the business, upon receipt of an application for insurance, to enter into a contract with the applicant in the shape of a so-called 'binding receipt' for temporary insurance pending the consideration of the application, to last until the policy be issued or the application rejected, and such contracts are upheld and enforced when the applicant dies before the issuance of a pol-

icy or final rejection of the application. It is held, too, that such contracts may rest in parol. Counsel for appellant insists that such a preliminary contract for temporary insurance was entered into in this instance, but we do not think so. On the contrary, the clause in the application and the receipt given by the solicitor, which are to be read together, stipulate expressly that the insurance shall become effective only when the 'application shall be approved and the policy duly signed by the secretary at the head office of the company and issued.' It constituted no agreement at all for preliminary or temporary insurance."

See, also, *Northwestern Mutual Life Insurance Company* v. *Neafus,* 145 Ky. 563 (140 S. W. 1026, 36 L. R. A. [N. S.] 1211); *Wheelock* v. *Clark,* 21 Wyo. 300 (131 Pac. 35, Ann Cas. 1916A, 956).

In the case at bar the application and receipt for premium paid, contained a promise to return the premium paid if the policy applied for was not issued. It also contained a proviso that the policy would be issued as applied for provided said application is approved and accepted at the home office. Under the application the insurance company reserved the right to accept the application and until the same was accepted there was no binding contract between the applicant and the insurance company. It also follows that there was no interim insurance.

The judgment of the trial court is affirmed, with costs to defendant.

BUSHNELL, C. J., and BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.