760 F.2d 670
 Joanne SPENCER, Leo M. Kistner, Personal Representative of
the Estate of Daniel Ninowski, and Mildred Ninowski, and Leo
M. Kistner, Personal Representative of the Estate of Joseph
Ninowski, Sr., and Linda Ninowski, Plaintiffs-Appellants,
v.
PHOENIX MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 Nos. 83-1818, 83-1831.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 22, 1985.
Decided March 26, 1985.
 
 Charles Gottlieb (argued), Gottlieb and Goren, Detroit, Mich., for plaintiffs-appellants in No. 83-1818.
 Gary R. Dettloff (argued), Kistner, Schienke, Staugaard, Dettloff, Kistner, Troyanovich, Warren, Mich., for plaintiffs-appellants in No. 83-1831.
 James E. Brenner (argued), Thomas M. Woods, Detroit, Mich., for defendant-appellee.
 Before MARTIN and JONES, Circuit Judges, and PORTER, District Judge.*
 PER CURIAM.
 
 
 1
 Appellants, Joanne Spencer and Leo M. Kistner, the personal representative of the Estate of Daniel and Mildred Ninowski and the personal representative of the Estate of Joseph and Linda Ninowski, appeal from a judgment for appellee, Phoenix Mutual Life Insurance Company (Phoenix). Upon consideration of the issues presented by this appeal, we affirm.
 
 
 2
 Trinity Broadcasting Corporation (Trinity) asked Ronald Ninowski, an insurance salesperson for Ninowski Brothers Insurance Agency and its subsidiary, Self Funding Group Services (Self Funding), to acquire a quote on a group life insurance policy from Phoenix. Phoenix's regional manager Kermit Houser wrote the census information on Trinity. On January 16, 1980, Phoenix submitted its proposal for a group life insurance policy. Subsequently, Phoenix mailed enrollment cards to Trinity's employees. Only Dean Spencer, Trinity's vice president, filled out and returned a card.
 
 
 3
 On February 12, 1981, at Trinity's request, Phoenix amended its proposal to provide more monetary coverage. On February 16, 1981, Joseph Ninowski and Daniel Ninowski underwent physical examinations. Subsequently, Ronald Ninowski and Houser met.
 
 
 4
 During that meeting Ronald Ninowski presented to Houser a form requesting participation in an unnamed industry group insurance fund. The form, which had been signed by Daniel Ninowski, left open the date upon which the insurance policy was to become effective. As a result, when Ronald Ninowski presented the form to Houser, Daniel Ninowski had not filled in the effective date, but instead had left it blank. Hence, during Ronald Ninowski's meeting with Houser "March 1, 1981" (effective date) was inserted as the date upon which the group insurance would become effective.
 
 
 5
 Subsequently, Ronald Ninowski signed the form as Marketing Director for Self Funding and delivered it, along with Trinity's initial premium payment, to Houser. On February 19, 1981, three of Trinity's officers, Joseph Ninowski, Daniel Ninowski, and Dean Spencer, were killed in a plane crash. On May 19, 1981, Phoenix sent notice to Trinity that the group policy had been approved as of the effective date. Their beneficiaries, the appellants, requested and Phoenix refused to pay the proceeds under the group insurance policy.
 
 
 6
 To compel payment, appellants filed separate suits in state court. Those suits were removed to and then consolidated in the district court. Upon Phoenix's motion for summary judgment, the district court ordered the dismissal of appellants' consolidated action.
 
 
 7
 The court of appeals is mandated to apply the same test in passing upon an award of summary judgment as that utilized by the trial court to grant the motion. Howard v. Russell Stover Candies, Inc., 649 F.2d 620 (8th Cir.1981). Accordingly the conclusions of the trial court are not protected by the "clearly erroneous" rule, Luckett v. Bethlehem Steel Corp., 618 F.2d 1373 (10th Cir.1980), but rather the appellate tribunal, viewing the evidence in the light most favorable to the party opposing judgment, must determine if a genuine issue of material fact exists. Smith v. Hudson, 600 F.2d 60 (6th Cir.1979), cert. denied, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). See also Security National Bank v. Belleville Livestock Commission Co., 619 F.2d 840 (10th Cir.1980).
 
 
 8
 Glenway Industries, Inc. v. Wheelabrator-Frye, Inc., 686 F.2d 415, 417 (6th Cir.1982).
 
 
 9
 The district court noted that under Michigan Law "the words in a policy [are] ... interpreted according to their ordinary usage, [and thereby] avoiding forced or strained meanings." P.L. Kanter Agency, Inc. v. Continental Casualty Co., 541 F.2d 519, 521 (6th Cir.1976). Thus, the determination of whether Trinity's group life insurance policy became effective before Trinity's officers died depends upon an interpretation of the relevant policy provisions in light of the facts of the instant case. See id. The district court concluded that the policy did not become effective before the officers died. We affirm the district court for the following reasons.
 
 
 10
 First, the district court characterized as an offer the form that was signed by Daniel Ninowski and presented by Ronald Ninowski to Houser on February 16, 1981. The district court also stated that Phoenix's proposal for a group life insurance policy was not an offer because it "only ... invite[d] Trinity to submit an application to ... [Phoenix] when the proposal was accepted by Trinity." Appellants contend that as a matter of law such invitations have been construed as offers when "(a) criteria are described for evaluation of the application; and (b) an application of the application fee has been tendered. Steinberg v. Chicago Medical School, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977); Yakin v. Univ. of Illinois, 508 F.Supp. 848 (N.D.Ill.) (1981)." We agree with the district court, however. The proposal specifically required an application for insurance after acceptance of the proposal. Moreover, we note that appellants attempt to use Illinois case law to support their point when Michigan law is the applicable law.
 
 
 11
 Second, the district court reasoned that March 1, 1981 was the date upon which the insurance became effective because Daniel Ninowski signed the form in blank. Appellants contend that the district court imputed to Trinity Ronald Ninowski's knowledge of that effective date. In further support, appellants contend that the imputation was improper because Ronald Ninowski was Phoenix's agent and not Trinity's agent. We agree that Ronald Ninowski was Phoenix's agent. We disagree that the district court imputed knowledge of the effective date to Trinity from Ronald Ninowski. Instead, the district court merely recognized that signing the form in blank allowed Phoenix to establish the effective date and that "Trinity, having signed the form in blank, cannot complain about the insertion of the March 1, date, nor, therefore, can plaintiffs."
 
 
 12
 Third, appellants appear to argue that there existed coverage from the time of payment of the premium to the effective date. Michigan law, however, does not recognize an interim insurance coverage theory. Instead, Michigan law, as announced in Smiley v. Prudential Insurance Company, 321 Mich. 60, 32 N.W.2d 48 (1948) and applied by Bellak v. United Home Life Insurance Company, 211 F.2d 280 (6th Cir.1954) and recognized by Liberty National Life Insurance Company v. Hamilton, 237 F.2d 235, 239 (6th Cir.1956), holds that an insurance application's requirement of home office approval prior to the insurance becoming effective is controlling; therefore, there is no coverage before that approval is given. This approach is consistent with Michigan's theory that an application for insurance is only an offer which must be accepted before the contract comes into existence. Gorham v. Peerless Life Insurance Company, 368 Mich. 335, 118 N.W.2d 306 (1962). Moreover, Smiley has neither been criticized nor overruled by the Michigan judiciary. Bellak, however, was reversed because a factual question was not fully developed to justify disposing of the case on a summary judgment motion. Id.; Bellak, 211 F.2d at 283; see also Bellak v. United Home Life Insurance Company, 244 F.2d 623 (6th Cir.1957) (after remand). In this particular case, however, all pertinent factual questions have been resolved.
 
 
 13
 Accordingly, the district court's judgment is AFFIRMED.
 
 
 
 *
 The Honorable David S. Porter, Senior District Judge, United States District Court for the Southern District of Ohio, sitting by designation